UNITED STATED DISTRIC TCOURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONLAN ABU, a foreign company, and
RYAN MOORE, an individual,

        Plaintiffs,

v

STANLEY B. DICKSON, JR., an individual, and DICKSON & ASSOCIATES, P.C., a Michigan professional company,

        Defendants,

Case No.
Hon.

_____/

R. Christopher Cataldo (P39353)
Benjamin M. Low (P82834)
Jaffe, Raitt, Heuer & Weiss, PC
Attorneys for Plaintiffs
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
(248) 351-3000
ccataldo@jaffelaw.com
benlow@jaffelaw.com

_____/

## COMPLAINT AND JURY DEMAND

Plaintiffs Conlan Abu and Ryan Moore ("Plaintiffs"), by and through their attorneys, Jaffe, Raitt, Heuer & Weiss, P.C., and for their Complaint against Defendants Stanley B. Dickson, Jr. ("Dickson") and Dickson & Associates, P.C. ("Associates", together with Dickson, the "Defendants"), state and allege as follows:

## PARTIES

1. Plaintiffs Conlan Abu ("Conlan Abu") is a California corporation, authorized to conduct business in the State of Michigan. Conlan Abu's principal place of business is in Macomb County, Michigan.

2. Plaintiff Ryan Moore ("Moore") is an individual who resides in Oakland County, Michigan. Moore is a 50% owner of Conlan Abu.

3. Defendant Dickson is an individual who resides in Grosse Pointe Park, Wayne County, Michigan. Dickson is the majority owner of Associates.

4. Defendant Associates is a Michigan professional corporation with its principal place of business in Detroit, Michigan. Associates claims to be engaged in the business of providing accounting and related professional services.

## JURISDICTION AND VENUE

5. This action is brought, in part, pursuant to the Computer Fraud and Abuse Act ("CFAA"), 18 USC § 1030; the Federal Wiretap Act ("FWA"), 18 USC §2510 *et seq*; and the Stored Communications Act ("SCA"), 18 USC § 2701 *et seq*.

6. This Court has federal question jurisdiction over this action pursuant to the CFAA, FWA, and the SCA, and supplemental jurisdiction pursuant to 28 USC § 1367 over Plaintiff's state law claims arising out of the allegations set forth in this Complaint.

7. Venue is proper in this Court under 28 USC § 1391.

4802698.v2

# FACTS

8. Dickson was the owner of the Epicurean Group, which consisted of a number of related companies which conducted catering operations and also held management contracts for several restaurants including the No. VI Chophouse, Nomad Grill, and the Soul Café, among others ("Epicurean Group").

9. On January 1, 2019 Conlan Abu attempted to purchase the assets of Epicurean Group pursuant to an Asset Purchase Agreement that required Mr. Dickson and the companies in the Epicurean Group (the "State Court Defendants") to assign all the assets of Epicurean Group (the "Asset Purchase Agreement"), including all contracts, leases, service agreements, and management contracts to Conlan Abu (the "Asset Purchase").

10. As part of the Asset Purchase, the State Court Defendants were to assign and convey the management contracts for the Epicurean Group's restaurants and catering operations to Conlan Abu so that Conlan Abu would have the right to operate the restaurants and catering operations and also to sell alcohol in certain of the restaurants (the "Assignments").

11. Even though the State Court Defendants were required to provide the Assignments on January 1, 2019, they did not; however, Conlan Abu relied on Dickson's representations that it would receive the Assignments and closed on the

3

Asset Purchase on or about January 1, 2019 even though it did not receive all of the principal assets in return for its tender of the purchase price.

12. Instead, the State Court Defendants failed or refused to provide the Assignments and breached material terms of the Asset Purchase Agreement.

13. Prior to the January 1, 2019 closing, Associates (and/or one of its agents or employees) acted as the IT administrator for the Epicurean Group email account.

14. Subsequent to the January 1, 2019 closing, Plaintiffs purchased a business license for the Microsoft Office 365 suite of services, which included a subscription to an online version of Outlook Mail. Plaintiffs purchased this license directly from Microsoft.

15. After January 1, 2019, Plaintiffs used an email account that affected interstate commerce for business purposes (the "E-Mail Account").

16. The E-Mail Account was originally set up by Associates prior to January 1, 2019 (and/or one of its employees), whom, upon information and belief, retained administrative access and/or the password to the E-Mail Account after January 1, 2019, even though neither Ryan Moore, nor Conlan Abu, hired or retained Associates to act as an administrator for the E-Mail Account or authorized it to retain the password to, or access, the E-Mail Account.

17. After January 1, 2029, the E-Mail Account was hosted and serviced by Microsoft, as part of Outlook Mail, under Plaintiffs' Microsoft Office 365 business license purchased from Microsoft.

18. On, or about July 15, 2019, Conlan Abu notified the State Court Defendants in writing that they were in default on the terms of the Asset Purchase Agreement.

19. Because the State Court Defendants refused to honor their contractual obligations under the Asset Purchase Agreement, on or about July 20, 2019, Conlan Abu tendered back what it acquired from the State Court Defendants (the "Tender"). However, the State Court Defendants rejected the Tender. Regardless, the Tender did not include the rights to access the Email Account which was to have been controlled by Plaintiffs through the Microsoft license they purchased directly from Microsoft and which was not an asset that was the subject of the Asset Purchase Agreement.

20. Plaintiffs and a non-party filed litigation in the Circuit Court for the County of Oakland against Dickson and other parties (the "State Court Action"), which is still ongoing. The Plaintiffs' claims in the State Court Action focus on the Defendants' breach of the APA. Associates is not a party to the State Court Action.

21. At some point in time in August of 2019 and/or thereafter, Defendant Dickson and his company, Associates, improperly accessed and exceeded authorized

access, without permission or authorization, to Plaintiff's emails that were sent and received through the E-Mail account. The unauthorized access occurred on more than one occasion, the exact number of such events shall be determined through discovery.

22. Plaintiffs did not authorize Defendants to access the E-Mail Account at any time.

23. Plaintiffs have incurred thousands of dollars of costs in their investigation of how the Defendants improperly accessed the emails in question and such amounts continue to accrue as the investigation continues.

24. Plaintiffs' investigation thus far has revealed that Defendants accessed the E-Mail Account without authorization, or in excess of permitted authorization, in at least two ways.

25. First, without Plaintiffs' consent or permission, Defendants changed the access on the E-Mail Account to allow Dickson and employees of Associates to access the E-Mail Account and to read and print Moore's E-Mails that were sent and received through the E-Mail account and which had been stored on Microsoft's cloud based servers.  By accessing the E-Mail account in this manner, Defendants were able to bypass Plaintiffs' password protections on the E-Mail account.

4802698.v2

26. By accessing the E-Mail Account in this manner, Defendants accessed the cloud-based servers where Moore's E-Mails were hosted without authorization or permission from Moore.

27. Second, without consent or permission from Plaintiffs, Defendants ran an automated program on the E-mail Account that contemporaneously intercepted Moore's E-Mails and converted those E-Mails into a .pst file, which was then read and printed by the Defendants. By running this automated program, Defendants were able to circumvent the password protection on the E-Mail account and obtain access to the emails stored on the cloud-based servers without Plaintiffs' permission or consent.

28. At the time the E-Mails in question were improperly accessed, they were stored on a "protected computer" as defined under federal law.

## COUNT I

**Violation of Computer Fraud and Abuse Act, 18 U.S.C. §1030**

29. Plaintiffs reassert and incorporate all prior paragraphs as though fully stated herein.

30. In addition to its criminal penalties, the CFAA gives a private cause of action for the damage and losses caused by the intentional, unauthorized, access of a protected computer.

4802698.v2

31. During the relevant period, Defendants were not authorized to access the E-Mail Account, the computer the E-Mail Account was hosted on, and/or exceeded their authorization, and were not authorized to access Plaintiff's emails stored through the E-Mail Account.

32. Defendants intentionally and without consent, permission, or authorization gained access to confidential and sensitive information through the E-Mail Account.

33. The E-Mail Account was hosted on a protected computer which at all relevant times operated and affected interstate commerce.

34. Without consent, permission or authorization, Defendants obtained confidential, proprietary, and sensitive business records and e-mails of Plaintiffs through their unauthorized access of the E-Mail Account and/or access that exceeded existing permission or authorization.

35. Defendants' intentional access of the protected computers and the E-Mail Account caused loss and damages to Plaintiffs, including, but not limited to, costs in excess of $5,000.00 incurred to investigate how Defendants obtained unauthorized access to Plaintiff's E-Mails and the E-Mail Account and the extent of the unauthorized access, and such costs continue to accrue as the investigation continues.

36. Defendants took all such actions knowingly and intentionally and without Plaintiffs' consent or permission and in violation of the Computer Fraud and Abuse Act.

37. As a direct and proximate result of Defendants' unlawful and improper actions, Plaintiffs have suffered losses in an amount to be proven at trial.

38. Punitive and exemplary damages are appropriate because Defendants' actions were willful and intentional.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment in their favor and against Defendants, in an amount to be determined at trial, plus their costs and attorneys' fees, and any such other and further relief as the Court deems just and proper.

## COUNT II
### Violation of Federal Wiretap Act, 18 U.S.C. §2510 *et seq*

39. Plaintiffs reassert and incorporate all prior paragraphs as though fully stated herein.

40. The FWA criminalizes and creates civil liability for the intentional interception of electronic communications without a judicial warrant.

41. The FWA provides a civil remedy for the interception of an electronic communication and the disclosure and use of an intercepted electronic communication.

42. Under the FWA, the interception of an electronic communication is the acquisition of the contents of the communication through the use of any electronic devices, which include computer programs.

43. Defendants are not authorized users of the E-Mail Account and/or exceeded their authorization.

44. Without authorization, Defendants used a computer program to contemporaneously intercept Plaintiffs' electronic communications and used those communications to benefit themselves.

45. Defendants took all such actions knowingly and intentionally and in violation of the FWA.

46. Punitive and exemplary damages are appropriate because Defendants' actions were willful and intentional.

47. This Court should award Plaintiffs' their attorneys' fees under 18 U.S.C. § 2520(b)(3).

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment in their favor and against Defendants, grant Plaintiffs damages against Defendants including, but not limited to, actual damages, exemplary damages, and statutory damages, plus their costs and attorneys' fees, and any such other and further relief as the Court deems just and proper.

## COUNT III
### Violation of the Stored Communications Act, 18 U.S.C. § 2701 *et seq*

48. Plaintiffs reassert and incorporate all prior paragraphs as though fully stated herein.

49. The SCA prohibits the intentional access of a facility through which an electronic communication service is provided without authorization, or intentionally exceeding authorization to access that facility, and the obtaining, altering, or prevention of authorized access to an electronic communication while it is in electronic storage in such system.

50. In addition to its criminal penalties, the SCA provides a civil cause of action for any person aggrieved by any violation of the SCA.

51. Defendants intentionally and without authorization gained access to confidential and sensitive information stored on a facility through which an electronic communications service is provided by accessing Moore's E-Mails that were stored on Microsoft's cloud-based Office 365 servers.

52. Under the SCA, Microsoft's cloud-based Office 365 servers are a facility through which an electronic communication service is provided.

53. Without authorization, Defendants obtained confidential, proprietary, and sensitive business records and electronic communications of Plaintiffs while they were stored on Microsoft's cloud-based Office 365 serves.

54. Defendants' unauthorized access or access in excess of authorization caused actual harm to Plaintiffs, including but not limited to, investigation costs, attorneys' fees, and the improper disclosure of confidential and sensitive information.

55. Defendants took all such actions knowingly and intentionally and in violation of the SCA.

56. Punitive and exemplary damages are appropriate because Defendants' actions were willful and intentional.

57. This Court should award Plaintiffs their attorneys' fees under 18 U.S.C. § 2707(c).

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment in their favor and against Defendants, grant Plaintiffs damages against Defendants, including, but not limited to, actual damages, punitive damages, and statutory damages, plus their costs and attorneys' fees, and any such other and further relief as the Court deems just and proper.

## COUNT IV
### Civil Conspiracy

58. Plaintiffs reassert and incorporate all prior paragraphs as though fully stated herein.

4802698.v2

59. Defendants, directly and/or through their agents, entered into an agreement to harm Plaintiffs, or acted in concert in a manner that was detrimental to Plaintiffs.

60. Defendants illegally, maliciously, and wrongfully conspired with one another with the intent to, and for the illegal purpose of engaging in the impermissible acts described previously in this Complaint.

61. Defendants' actions, in combination, were tortious and/or unlawful, or in the alternative, were designed to accomplish an unlawful purpose, or accomplish a lawful purpose through unlawful means.

62. As a result of the conspiracy and Defendants' illegal, wrongful, and tortious acts, Plaintiffs sustained significant WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment in their favor and against Defendants, grant Plaintiffs damages in an amount to be determined at trial plus their costs and attorneys' fees, and any such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a jury on all issues so triable.

Dated: March 20, 2020

Respectfully Submitted,

<u>/s/ R. Christopher Cataldo</u>
R. Christopher Cataldo (P39353)
Benjamin M. Low (P82834)
Jaffe, Raitt, Heuer & Weiss, PC
Attorneys for Plaintiff
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
(248) 351-3000
ccataldo@jaffelaw.com
benlow@jaffelaw.com

4802698.v2